**JOHN DOE NO. 1, Individually and on behalf of all those similarly situated, Plaintiff,**

v.

**GEORGIA DEPARTMENT OF PUBLIC SAFETY, et al. Defendants.**

**No. CIV.A. 1:01–CV–618–T.**

United States District Court, N.D. Georgia, Atlanta Division.

June 6, 2001.

Christopher David Adams, Adams & Alford, Athens, GA, for Plaintiff.

Nicholas G. Dumich, John C. Jones, Kathleen Mary Pacious, Thurbert E. Baker, Office of State Attorney General, Atlanta, GA, Matthew R. Lavallee, Georgia State Law Department, Atlanta, GA, for Defendants.

## ORDER

THRASH, District Judge.

This is an action challenging the Georgia law that restricts the issuance of Georgia driver's licenses to illegal aliens. It is

before the Court on the Defendants' Motion to Dismiss [Doc. 4] and Plaintiff's Motion to Remand [Doc. 5]. For the reasons set forth below, the Defendants' Motion to Dismiss is granted.

## I. BACKGROUND

Plaintiff John Doe is an illegal alien residing in the State of Georgia. He seeks to represent a class of illegal aliens residing in Georgia. He alleges that the application of O.C.G.A. §§ 40–5–1(15) and 40–5–20(a) deprives them of the ability to obtain a Georgia driver's license in violation of their civil rights, specifically their right to the equal protection of the laws. The Defendant Hightower is sued in his official capacity as Commissioner of the Georgia Department of Public Safety. The Department is also named as a Defendant.

The Plaintiff alleges that his permanent residence is in the state of Georgia and that he has resided here for more than 31 days. He is an illegal alien who does not have proper authorization from the United States government to be in this country. In his Complaint, the Plaintiff argues that Georgia law interferes with his fundamental right of interstate travel. He contends that Georgia has no compelling interest which requires unequal treatment of illegal aliens with respect to the issuance of driver's licenses. He also argues that immigration matters are the exclusive province of the federal government and that the Georgia statutes in question are preempted.

## II. MOTION TO DISMISS STANDARD

A complaint should be dismissed under Rule 12(b)(6) only where it appears beyond doubt that no set of facts could support the plaintiff's claims for relief. Fed.R.Civ.P. 12(b)(6); see *Conley v. Gibson,* 355 U.S. 41, 47, 78 S.Ct. 99, 102, 2 L.Ed.2d 80 (1957); *Linder v. Portocarrero,* 963 F.2d 332 (11th Cir.1992). In ruling on a motion to dismiss, the court must accept the facts pleaded in the complaint as true and construe them in the light most favorable to the plaintiff. See *Quality Foods de Centro America, S.A. v. Latin American Agribusiness Dev. Corp., S.A.,* 711 F.2d 989, 994–95 (11th Cir.1983). Notice pleading is all that is required for a valid complaint. See *Lombard's, Inc. v. Prince Mfg., Inc.,* 753 F.2d 974, 975 (11th Cir.1985), *cert. denied,* 474 U.S. 1082, 106 S.Ct. 851, 88 L.Ed.2d 892 (1986). Under notice pleading, plaintiff need only give the defendant fair notice of the plaintiff's claim and the grounds upon which it rests. *Id.*

## III. DISCUSSION

### A. MOTION TO REMAND

In the Answer, the Defendants asserted the defense of Eleventh Amendment immunity with respect to Plaintiff's monetary damage claims. In response, the Plaintiff filed a Motion to Remand in which he states that "the Eleventh Amendment to the U.S. Constitution prevents this Court from exercising jurisdiction over the State of Georgia."[1] The Defendants responded by agreeing that the Eleventh Amendment bars Plaintiff's claim for monetary damages. Nevertheless, they contend that the Court clearly has jurisdiction as to the claims for declaratory and injunctive relief pursuant to *Ex parte Young,* 209 U.S. 123, 28 S.Ct. 441, 52 L.Ed. 714 (1908).

1. The Eleventh Circuit has recently held that removal of an action to Federal court does not waive the State's Eleventh Amendment immunity. *Lapides v. Board of Regents of University System of Georgia,* 251 F.3d 1372 (11th Cir.2001).

The Defendants take the position that the Court should address the merits of the Plaintiff's constitutional claim. The Court agrees and the Motion to Remand is denied.

### B. *MOTION TO DISMISS*

Georgia law requires residents of the state to have a Georgia driver's license in order to operate a motor vehicle. O.C.G.A. § 40–5–20(a). A person must be a resident in order to apply for a Georgia driver's license. O.C.G.A. § 40–5–24. Anyone present in the state for 30 days or more is presumed to be a resident; "provided, however, that no person shall be considered a resident for purposes of this chapter unless such person is either a United States citizen or an alien with legal authorization from the U.S. Immigration and Naturalization Service." O.C.G.A. § 40–5–1(15). Plaintiff contends that these statutes deprive him of the equal protection of the laws in violation of the Fourteenth Amendment to the Constitution of the United States. He argues that the statute must be subjected to strict scrutiny and may be upheld only upon a showing that it is justified by a compelling state interest. The Defendants argue that a lesser standard of scrutiny applies.

■ The Fourteenth Amendment provides that "[n]o State shall ... deprive any person of life, liberty, or property, without due process of law; nor deny to any person within its jurisdiction the equal protection of the laws." U.S. Const. Amend XIV, § 1. "The Fourteenth Amendment and the laws adopted under its authority thus embody a general policy that all persons lawfully in this country shall abide 'in any state' on an equality of legal privileges with all citizens under nondiscriminatory laws." *Torao Takahashi v. Fish and Game Commission,* 334 U.S. 410, 420, 68 S.Ct. 1138, 92 L.Ed. 1478 (1948). The Fourteenth Amendment to the Constitution is not confined to the protection of citizens. *Plyler v. Doe,* 457 U.S. 202, 212, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982). The Equal Protection Clause directs that " all persons similarly circumstanced shall be treated alike." *Id.* at 216, 102 S.Ct. 2382 (quoting *F.S. Royster Guano Co. v. Virginia,* 253 U.S. 412, 415, 40 S.Ct. 560, 64 L.Ed. 989 (1920)). Nevertheless, "[t]he Constitution does not require things which are different in fact or opinion to be treated in law as though they were the same." *Id.* at 216, 102 S.Ct. 2382 (quoting *Tigner v. Texas,* 310 U.S. 141, 147, 60 S.Ct. 879, 84 L.Ed. 1124(1940)). Legislative classifications are presumptively invidious that disadvantage a "suspect class," or that impinge upon the exercise of a "fundamental right." *Id.* at 216–17, 102 S.Ct. 2382.

In *Plyler,* the Supreme Court addressed the issue of the constitutionality of a Texas statute denying the children of illegal immigrants the right to a free public education. With respect to whether illegal aliens are a suspect class, the Court held:

> We reject the claim that "illegal aliens" are a "suspect class." No case in which we have attempted to define a suspect class ... has addressed the status of persons unlawfully in our country. Unlike most of the classifications that we have recognized as suspect, entry into this class, by virtue of entry into this country, is the product of voluntary action. Indeed, entry into the class is itself a crime. In addition, it could hardly be suggested that undocumented status is a "constitutional irrelevancy."

*Id.* at 219, n. 19, 102 S.Ct. 2382. Nevertheless, the Court drew a distinction between illegal aliens and their children:

The children who are plaintiffs in these cases are special members of this underclass. Persuasive arguments support the view that a State may withhold its beneficence from those whose very presence within the United States is the product of their own unlawful conduct. These arguments do not apply with the same force to classifications imposing disabilities on the minor children of such illegal entrants. At the least, those who elect to enter our territory by stealth and in violation of our law should be prepared to bear the consequences, including, but not limited to, deportation. But the children of those illegal entrants are not comparably situated. Their "parents have the ability to conform their conduct to societal norms," and presumably the ability to remove themselves from the State's jurisdiction; but the children who are plaintiffs in these cases "can affect neither their parents' conduct nor their own status."

*Id.* at 219–20, 102 S.Ct. 2382 (quoting *Trimble v. Gordon*, 430 U.S. 762, 770, 97 S.Ct. 1459, 52 L.Ed.2d 31 (1977)). The Court recognized the power of the states to act with respect to illegal aliens, "at least where such action mirrors federal objectives and furthers a legitimate state goal." *Id.* at 225, 102 S.Ct. 2382. The Court reaffirmed its ruling in *DeCanas v. Bica*, 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976) regarding the right of the states to bar from employment all aliens except those possessing a grant of permission to work in this country. *Plyler*, 457 U.S. at 225, 102 S.Ct. 2382. The Court then concluded that the State of Texas had made no showing that denying a discrete group of innocent children the free public education, that it offers to other children residing within its borders, furthers some substantial state interest.

■■ Following *Plyler*, it is clear that illegal aliens are not a "suspect class" that would subject the Georgia statute to strict scrutiny. Plaintiff, nonetheless, argues that the statute is subject to strict scrutiny because it places a burden upon his right of interstate travel. There is no express provision in the Constitution setting forth a right to travel. Nevertheless, the Supreme Court has recognized a fundamental right to interstate travel. *Attorney General of New York v. Soto–Lopez*, 476 U.S. 898, 903, 106 S.Ct. 2317, 90 L.Ed.2d 899 (1986) (Brennan, J., plurality opinion); *Shapiro v. Thompson*, 394 U.S. 618, 629–30, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969); *Miller v. Reed*, 176 F.3d 1202, 1205 (9th Cir.1999). Burdens placed on travel generally, such as gasoline taxes, or minor burdens impacting interstate travel, such as toll roads, do not constitute a violation of that right. *Kansas v. United States*, 16 F.3d 436, 442 (D.C.Cir.1994).

■ The Plaintiff's argument begins with the remarkable assumption that an illegal alien has the same fundamental rights as a citizen or lawful resident alien. Plaintiff is unable to cite any case law in support of this assumption. It would be curious indeed if the law gave illegal aliens a fundamental right to travel about this country when their mere presence here is a violation of federal law. Illegal aliens are subject to immediate arrest and ultimate deportation. It strains all bounds of logic and reason to say that such a person has a fundamental right of interstate travel. As discussed below, the cases involving a right of interstate travel are fundamentally opposed to recognizing a right of interstate travel for illegal aliens.

One of the Supreme Court's major decisions recognizing a right to travel is *Edwards v. California*, 314 U.S. 160, 62 S.Ct.

164, 86 L.Ed. 119 (1941). The case involved a California statute which penalized the bringing into the state of any non-resident indigent person. The majority opinion of the Supreme Court held that this statute violated the commerce clause. The state's attempt to block the transportation of persons across its borders was viewed by the Court as a classic trade barrier. Four of the Justices, in concurring opinions, would have held that the statute violated the Constitution because the right to interstate travel was one of the privileges or immunities protected by the Fourteenth Amendment. *Id.* at 177, 62 S.Ct. 164. In Justice Jackson's concurring opinion, he made the case that fundamental constitutional rights afforded *citizens* of the United States should not be allocated by wealth:

> That choice of residence was subject to local approval is contrary to the inescapable implication of the westward movement of our civilization... We should say now, and in no uncertain terms, that a man's mere property status, without more, cannot be used by a state to test qualify, or limit his rights as a citizen of the United States. "Indigence" itself is neither a source of rights nor a basis for denying them... If I doubted whether his federal citizenship alone were enough to open the gates of California to Duncan, my doubt would disappear on consideration of the obligations of such citizenship... Rich or penniless, Duncan's citizenship under the Constitution pledges his strength to the defense of California as a part of the United States, and his right to migrate to any part of the land he must defend is something she must respect under the same instrument. Unless this Court is willing to say that citizenship of the United states means at least this much to the citizen,

then our heritage of constitutional privileges and immunities is only a promise to the ear to be broken to the hope, a teasing illusion like a munificent bequest in a pauper's will.

*Id.* at 183–86, 62 S.Ct. 164. Justice Jackson's eloquent statement recognizes that the right to travel is derived from federal citizenship. Regardless of which passage in the Constitution the right to travel emanates from, the obvious correlation to national citizenship is fatal to Plaintiff's argument that a fundamental right is at stake in his entitlement to a Georgia driver's license. Plaintiff's presence in this country is unlawful. In fact, it would be a federal crime for someone knowingly to transport Plaintiff within the United States. 8 U.S.C. § 1324(a)(1)(A)(ii). It is contrary to logic to argue that Plaintiff possesses a fundamental constitutional right to move freely throughout the United States, but that criminal sanctions could be imposed on a person in whose car Plaintiff was a passenger.

■ The right to travel is not limited to the prohibition of actual barriers across state lines. Additionally, the modern right of travel protects new residents from state durational requirements that prohibit the conferring of benefits to those who recently moved to the state. *Shapiro v. Thompson,* 394 U.S. 618, 89 S.Ct. 1322, 22 L.Ed.2d 600 (1969) (one-year residency requirement for welfare benefits invalidated); *Memorial Hospital v. Maricopa County,* 415 U.S. 250, 269, 94 S.Ct. 1076, 39 L.Ed.2d 306 (1974) (invalidating Arizona statute that required one-year residency to receive non-emergency hospitalization and medical care at county's expense); *Dunn v. Blumstein,* 405 U.S. 330, 360, 92 S.Ct. 995, 31 L.Ed.2d 274 (1972) (Tennessee law requiring indi-

viduals to live in state for one year and a particular county for three months before being eligible to vote in state, county and local elections unconstitutional). The rationale underlying these cases is the protection of citizens who enjoyed certain rights and privileges in their old residence from being denied these rights upon arrival in a new state. These durational requirements are also invalid because they might "chill" the fundamental right to interstate travel by discouraging migration to new areas. As an illegal alien, Plaintiff is not entitled to rights in Georgia that need to be protected because he changed his residence from another state.

The Georgia statutes in question do not burden interstate travel by citizens or legal aliens. The state does not require a new resident to wait a certain period before applying for a license. The state simply requires that an applicant establish residency before demanding state services. *Martinez v. Bynum,* 461 U.S. 321, 325–26, 103 S.Ct. 1838, 75 L.Ed.2d 879 (1983). Durational residency requirements are struck down because they create two distinct classes of citizens. However, "[a] bona fide residence requirement, appropriately defined and uniformly applied, furthers the substantial state interest in assuring that services provided for its residents are enjoyed only by residents." *Id.* at 328, 103 S.Ct. 1838. Even if the Court were to hold that Plaintiff possessed the right to interstate travel, the Georgia statute does not burden or penalize that right. Any person is free to move to Georgia and establish a valid residence, either through citizenship or legal status as an alien, and receive a valid drivers's license.

Assuming for the sake of discussion that Plaintiff has a fundamental right to travel,

the Georgia statutes in question do not violate that right. The Circuit Courts have uniformly held that burdens on a single mode of transportation do not implicate the right to interstate travel. *See Miller v. Reed,* 176 F.3d 1202, 1205 (9th Cir.1999) (no fundamental "right to drive"); *Monarch Travel Servs., Inc. v. Associated Cultural Clubs, Inc.,* 466 F.2d 552, 554 (9th Cir.1972) ("A rich man can choose to drive a limousine; a poor man may have to walk. The poor man's lack of choice in his mode of travel may be unfortunate, but it is not unconstitutional."); *City of Houston v. FAA,* 679 F.2d 1184, 1198 (5th Cir.1982) ("At most, [the air carrier plaintiffs'] argument reduces to the feeble claim that passengers have a constitutional right to the most convenient form of travel. That notion, as any experienced traveler can attest, finds no support whatsoever in [the Supreme Court's right of interstate travel jurisprudence] or in the airlines' own schedules."); *Duncan v. Cone,* 2000 WL 1828089 (6th Cir.2000) ("While a fundamental right to travel exists, there is no fundamental right to drive a motor vehicle."). A legal resident of Georgia does not have a constitutional right to a driver's license. Regulation of the driving privilege is a quintessential example of the exercise of the police power of the state, and the denial of a single mode of transportation does not rise to the level of a violation of the fundamental right to interstate travel.

Plaintiff also argues that the entire field of immigration law is preempted by the United States Constitution and is the exclusive province of the federal government. This broad assertion is inconsistent with the holding in *Plyler v. Doe,* 457 U.S. 202, 212, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) and *DeCanas v. Bica,* 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976). Following

*Plyler*, the Georgia statute should be upheld if it "mirrors federal objectives and furthers a legitimate state goal." *Plyler*, 457 U.S. at 225, 102 S.Ct. 2382. Plaintiff's argument that the Georgia driver's license statute is a substantial burden upon national immigration policy is totally without merit. The Georgia statutes mirror federal objectives by denying Georgia driver's licenses to those who are in this country illegally according to federal law.

The Georgia statute also furthers legitimate state goals. First, it has been recognized that "[a] driver's license is one of the most useful single items of identification for creating an appearance of lawful presence." *Lopez v. United States Immigration and Naturalization Service*, 758 F.2d 1390, 1393 (10th Cir.1985). The State of Georgia has a legitimate interest in not allowing its governmental machinery to be a facilitator for the concealment of illegal aliens. Second, Georgia has a legitimate interest in limiting its services to citizens and legal residents. The State of Georgia is not required by the United States Constitution to spend scarce resources giving driving tests to illegal aliens who are subject to immediate deportation.[2] Finally, the Defendant argues that the statute promotes safety of the economy of Georgia. The State has a legitimate interest in restricting Georgia driver's licenses to those who are citizens or legal residents because of the concern that persons subject to immediate deportation will not be financially responsible for property damage or personal injury due to automobile accidents. For all of these reasons, the Georgia statute passes the test set forth by the Supreme Court in *Plyler v. Doe*, 457 U.S.

202, 212, 102 S.Ct. 2382, 72 L.Ed.2d 786 (1982) and *DeCanas v. Bica*, 424 U.S. 351, 96 S.Ct. 933, 47 L.Ed.2d 43 (1976). It is a legitimate exercise of the police power to regulate and supervise those authorized to exercise the privilege of driving automobiles on the highways of Georgia.

## IV. CONCLUSION

For the reasons set forth above, Plaintiff's Motion to Remand [Doc. 5] is DENIED. The Defendants' Motion to Dismiss [Doc. 4] is GRANTED. The Clerk is directed to enter judgment in favor of the Defendants.

---

**2.** Anyone who has recently taken a teenager to a Georgia State Patrol post on a Saturday morning in an effort to get a driver's license will appreciate that this is not an imaginary or insubstantial concern. According to Plaintiff's Complaint, there are more than 50,000 illegal aliens in Georgia.