Juan and Maria SANCHEZ, for Themselves and All Others Similarly Situated, and John and Jane Doe, For Themselves and All Others Similarly Situated, Appellants,

v.

STATE of Iowa, Tom Miller, Attorney General, State of Iowa, Kevin W. Techau, Commissioner, Iowa Department of Public Safety and Mark Wandro, Director, Department of Transportation, Appellees.

No. 04–0176.

Supreme Court of Iowa.

Feb. 18, 2005.

Curt N. Daniels, Chariton, for appellants.

Thomas J. Miller, Attorney General, and Mark Hunacek, Assistant Attorney General, for appellees.

CADY, Justice.

Immigrant access to driver's licenses has surfaced as a controversial issue in Iowa and throughout the United States, and it frames the issue presented in this

appeal.[1] Yet, this case does not require us to pass upon the merits of the competing policy arguments surrounding this issue— that is the role of the legislature. Rather, our task is to determine the legality and constitutionality of the practice in Iowa of denying driver's licenses to illegal aliens residing in this state. For the reasons that follow, we conclude the practice is both legal and constitutional. We affirm the decision of the district court.

## I. Background Facts and Proceedings

There are thousands of illegal aliens residing in Iowa.[2] Although they have entered the United States without complying with federal law, they live and work in Iowa and have become integrated into many Iowa communities. Like others in Iowa, they engage in myriad family and community activities that give rise to transportation needs. However, they are unable to obtain driver's licenses from the Iowa Department of Transportation (DOT) because they do not have social security numbers or other documents required by the state to obtain a driver's license.[3] Their unauthorized presence in the United States precludes them from qualifying for a social security number or from obtaining proper immigration documents.

Juan and Maria Sanchez represent a class of illegal, undocumented aliens present in the state who want to obtain driver's licenses.[4] John and Jane Doe represent a class of licensed drivers in the state who want the DOT to license the Sanchez class to make it safer for members of the Doe class to drive on the state's roads. On November 13, 2003, the Doe and Sanchez classes sued the State and various state officials, claiming that the denial of driver's licenses to the members of the Sanchez class violates the Fifth and Fourteenth Amendments of the United States Constitution, article I, sections 6 and 22 of the Iowa Constitution, 42 U.S.C. §§ 1981 and 1983, and 18 U.S.C. § 242. The State moved to dismiss, contending that illegal aliens have no right to receive driver's

1. *See generally* Am. Immigration Lawyers' Ass'n et al., *Immigrant Access to State Driver's Licenses: A Tool Kit for Advocates* (Feb.2004), *available at* http://www.nclr.org/content/publications/download/1073; Alexander L. Mounts, Note, *A Safer Nation?: How Driver's License Restrictions Hurt Immigrants and Noncitizens, Not Terrorists*, 37 Ind. L.Rev. 247 (2003); Frank Santiago, *Immigrant Court Case Stirs Debate Over Driving*, Des Moines Reg., Jan. 9, 2005, at 1B; Editorial, *Allow Driver's Licenses for Illegal Immigrants*, Des Moines Reg., Jan. 5, 2005, at 8A.

2. *See* Office of Immigration Statistics, U.S. Dep't of Homeland Sec., *2002 Yearbook of Immigration Statistics* 215 (Oct.2003), *available at* http://uscis.gov/graphics/shared/aboutus/statistics/ Yearbook2002.pdf (estimating there were 24,000 unauthorized immigrants in Iowa in 2000).

3. Iowa Code section 321.182(1)(*a*) (2003) requires applicants for licenses to provide a social security number on their applications for licenses. However, it also states: "Pursuant to procedures required by the department and for an applicant who is a foreign national temporarily present in this state, the department may waive the requirement that the application include the applicant's social security number." *Id.* Yet,

> [i]f a licensee is a foreign national who is temporarily in this state, the license shall be issued only for the length of time the foreign national is authorized to be present as determined by the department, not to exceed two years.

*Id.* § 321.196(1). To determine whether the applicant is "authorized to be present," DOT regulations require the applicant to submit one of sixteen immigration documents. *See* Iowa Admin. Code r. 761–601.5(2)(*a*)(4) (2002).

4. Juan and Maria Sanchez are pseudonyms for the members of the class, as are John and Jane Doe.

licenses in the State of Iowa and that the Doe class lacked standing.

The district court granted the State's motion to dismiss. This appeal followed. We address each claim raised by the classes in the following separate divisions of this opinion.

## II. Standards of Review

■ Questions of statutory interpretation are reviewed for correction of errors at law. *State v. Stratmeier*, 672 N.W.2d 817, 820 (Iowa 2003) (citing *State v. Hornik*, 672 N.W.2d 836, 838 (Iowa 2003); *State v. Stoneking*, 379 N.W.2d 352, 353–54 (Iowa 1985)). We review constitutional questions de novo. *State v. Buenaventura*, 660 N.W.2d 38, 44 (Iowa 2003) (citing *State v. Naujoks*, 637 N.W.2d 101, 106 (Iowa 2001)). A motion to dismiss should only be granted if the allegations in the petition, taken as true, could not entitle the plaintiff to any relief. *Mlynarik v. Bergantzel*, 675 N.W.2d 584, 586 (Iowa 2004) (citations omitted).

## III. State Statutory Claim

■ Iowa Code section 321.182(1)(*a*) allows the DOT to waive the social security number requirement for foreign nationals "[p]ursuant to procedures established by the department." The two classes claim that the social security requirement should be waived for illegal aliens because section 321.196(1) "command[s] the Department of Transportation to issue drivers licenses to undocumented aliens." We think the classes take this provision out of context.

Section 321.196 is the provision governing *renewal* of *existing* licenses. It presupposes that a licensee seeking renewal of a license previously qualified for and obtained a license. The statute does not allow, let alone "command," the DOT to issue licenses to anyone who does not meet the requirements of section 321.182.

Moreover, the Sanchez class has not followed the procedures established by the DOT to obtain a waiver of the social security number requirement. The DOT has adopted the following procedure for waiver:

> If you are a temporary foreign national who is not authorized for employment, the DOT may waive the Social Security Number requirement for a non-commercial driver's license or identification card. *However, you must present your immigration documents so that the DOT can record the BCIS (INS) number in lieu of the Social Security Number.*

Iowa Dep't of Transp., *Verification of Social Security Number for an Iowa Driver's License or ID Card*, at http://www.iamvd.com/ods/ssn.htm (last updated Feb. 25, 2004) (emphasis added). Under the DOT's procedure, only foreign nationals who are authorized by the INS (now the U.S. Citizenship and Immigration Services (USCIS) Bureau of the Department of Homeland Security) to be in the country are entitled to have the social security requirement waived. *See id.; see also* Iowa Dep't of Transp., *Foreign National Iowa Driver's Licenses & IDs*, at http://www.iamvd.com/ods/foreign.htm (last updated Feb. 25, 2004) ("Licenses and Non–Driver Identification Cards issued to temporary foreign nationals will be limited to the period of time the foreign national is authorized to be in the United States, not to exceed two years. The examiner or county treasurer will determine the term by reviewing Immigration and Naturalization Service (INS) documents. Temporary Foreign nationals should be prepared to show their INS documentation."). The district court correctly determined that the Sanchez class did not qualify for licenses under the state statutory scheme. We

thus turn to consider whether this statutory scheme is constitutional.

## IV. Constitutional Claims

### A. Equal Protection

The classes challenge the DOT's refusal to provide licenses to illegal aliens under the federal and state Equal Protection Clauses. The Equal Protection Clause of the Fourteenth Amendment to the United States Constitution prohibits states from "deny[ing] to any person within its jurisdiction the equal protection of the laws." U.S. Const. amend XIV, § 1. Article I, section 6 of the Iowa Constitution provides: "All laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen or class of citizens, privileges or immunities, which, upon the same terms shall not equally belong to all citizens." Iowa Const. art. I, § 6. Because neither party in this case has argued that our equal protection analysis under the Iowa Constitution should differ in any way from our analysis under the Federal Constitution, we decline to apply divergent analyses in this case. *See Racing Ass'n of Cent. Iowa v. Fitzgerald,* 675 N.W.2d 1, 6 (Iowa 2004) ("[I]t is prudent to delay any consideration of whether a different analysis is appropriate to a case in which this issue was thoroughly briefed and explored." (citing *In re Detention of Garren,* 620 N.W.2d 275, 280 n. 1 (Iowa 2000))).

 State laws are subjected to various levels of scrutiny depending on the classification the laws draw and the kind of right the laws affect. If a statute affects a fundamental right or classifies individuals on the basis of race, alienage, or national origin, it is subjected to strict scrutiny review. *City of Cleburne v. Cleburne Living Ctr.,* 473 U.S. 432, 440, 105 S.Ct. 3249, 3254, 87 L.Ed.2d 313, 320 (1985) (citations omitted). The State must prove it is narrowly tailored to the achievement of a compelling state interest. *Id.* (citations omitted). If a statute classifies individuals on the basis of gender or legitimacy, it is subject to intermediate scrutiny and will only be upheld if it is substantially related to an important state interest. *United States v. Virginia,* 518 U.S. 515, 533, 116 S.Ct. 2264, 2275, 135 L.Ed.2d 735, 751 (1996); *Lalli v. Lalli,* 439 U.S. 259, 268, 99 S.Ct. 518, 524, 58 L.Ed.2d 503, 511 (1978). But

[t]he general rule is that legislation is presumed to be valid and will be sustained if the classification drawn by the statute is rationally related to a legitimate state interest. When social or economic legislation is at issue, the Equal Protection Clause allows the States wide latitude, and the Constitution presumes that even improvident decisions will eventually be rectified by the democratic processes.

*City of Cleburne,* 473 U.S. at 440, 105 S.Ct. at 3254, 87 L.Ed.2d at 320 (citations omitted).

The classes argued in their brief that we should apply strict scrutiny in this case. However, at oral arguments, counsel correctly conceded that no suspect class or fundamental right was at issue in this case and that rational basis was the appropriate level of scrutiny. *See Plyler v. Doe,* 457 U.S. 202, 223, 102 S.Ct. 2382, 2398, 72 L.Ed.2d 786, 803 (1982) ("Undocumented aliens cannot be treated as a suspect class because their presence in this country in violation of federal law is not a 'constitutional irrelevancy.' "); *id.* at 218 n. 15, 102 S.Ct. at 2395 n. 15, 72 L.Ed.2d at 799 n. 15 (stating that fundamental rights are those explicitly or implicitly contained in the Constitution).

 Under rational-basis review, the statute need only be rationally related

to a legitimate state interest. *Cleburne,* 473 U.S. at 440, 105 S.Ct. at 3254, 87 L.Ed.2d at 320. As the Supreme Court has explained:

> Under rational-basis review, where a group possesses "distinguishing characteristics relevant to interests the State has the authority to implement," a State's decision to act on the basis of those differences does not give rise to a constitutional violation. "Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Moreover, the State need not articulate its reasoning at the moment a particular decision is made. Rather, the burden is upon the challenging party to negative " 'any reasonably conceivable state of facts that could provide a rational basis for the classification.' "

*Bd. of Trs. of Univ. of Ala. v. Garrett,* 531 U.S. 356, 366–67, 121 S.Ct. 955, 963–64, 148 L.Ed.2d 866, 879 (2001) (citations omitted); *see also Kimel v. Fla. Bd. of Regents,* 528 U.S. 62, 84, 120 S.Ct. 631, 646, 145 L.Ed.2d 522, 542 (2000) ("[W]hen conducting rational basis review 'we will not overturn such [government action] unless the varying treatment of different groups or persons is so unrelated to the achievement of any combination of legitimate purposes that we can only conclude that the [government's] actions were irrational.' " (quoting *Vance v. Bradley,* 440 U.S. 93, 97, 99 S.Ct. 939, 943, 59 L.Ed.2d 171, 176 (1979))).

The State proffers four state interests served by the challenged statute: (1) "not allowing its governmental machinery to be a facilitator for the concealment of illegal aliens," *Doe v. Ga. Dep't of Pub. Safety,* 147 F.Supp.2d 1369, 1376 (N.D.Ga.2001); (2) "limiting its services to citizens and legal residents," *id.;* (3) "restricting [Iowa] driver's licenses to those who are citizens or legal residents because of the concern that persons subject to immediate deportation will not be financially responsible for property damage or personal injury due to automobile accidents," *id.,* (4); and discouragement of illegal immigration.

 With respect to the first state interest, the classes respond that giving illegal aliens driver's licenses will not necessarily facilitate their concealment because the DOT could make the licenses identify the holder's status as an illegal alien. This is not an argument that the proffered state interest is not legitimate. Rather, it is an argument that the statute is not narrowly tailored. Nevertheless, the legislature is not required to employ the "best" means of achieving a legitimate state interest. Equal protection only requires the legislature to have reasonably believed that the means chosen would promote the purpose. *W. & S. Life Ins. Co. v. State Bd. of Equalization,* 451 U.S. 648, 668, 101 S.Ct. 2070, 2083, 68 L.Ed.2d 514, 531 (1981). "As long as the classificatory scheme chosen by [the legislature] rationally advances a reasonable and identifiable governmental objective, we must disregard the existence of other methods of allocation that we, as individuals, perhaps would have preferred." *Schweiker v. Wilson,* 450 U.S. 221, 235, 101 S.Ct. 1074, 1083, 67 L.Ed.2d 186, 198 (1981). At least in cases when rational basis scrutiny applies, our system of federalism and separation of powers requires courts to allow state legislatures " 'to serve as laboratories for testing solutions to novel legal problems.' " *Smith v. Robbins,* 528 U.S. 259, 275–76, 120 S.Ct. 746, 759, 145 L.Ed.2d 756, 773–74 (2000) (quoting *Arizona v. Evans,* 514 U.S. 1, 24, 115 S.Ct. 1185, 1198, 131 L.Ed.2d 34, 53 (1995) (Ginsburg, J., dissenting)); *accord United States v. Lopez,* 514 U.S. 549,

581, 115 S.Ct. 1624, 1641, 131 L.Ed.2d 626, 652 (1995) (Kennedy, J., concurring) (stating that when "considerable disagreement exists about how to best accomplish [a] goal, ... the theory and utility of our federalism are revealed, for the States may perform their role as laboratories for experimentation to devise various solutions where the best solution is far from clear" (citing *San Antonio Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 49–50, 93 S.Ct. 1278, 1304–05, 36 L.Ed.2d 16, 52–53 (1973); *New State Ice Co. v. Liebmann*, 285 U.S. 262, 311, 52 S.Ct. 371, 386–87, 76 L.Ed. 747, 771 (1932) (Brandeis, J., dissenting))).

■ We conclude the state's licensing scheme is rationally related to the legitimate state interest of "not allowing its governmental machinery to be a facilitator for the concealment of illegal aliens." *Doe*, 147 F.Supp.2d at 1376. Thus, the classes have failed to carry their burden of negating all reasonable bases that could justify the challenged statute. Furthermore, we need not address the legitimacy of the other state interests proffered in this case. Denying driver's licenses to the class of illegal aliens does not violate the equal protection clauses of the federal and state constitutions.

## B. Due Process

The classes also challenge the refusal by the DOT to license illegal immigrants under the Due Process Clauses of the federal and state constitutions. The Due Process Clause of the Fourteenth Amendment to the United States Constitution provides that no state shall "deprive any person of life, liberty, or property, without due process of law." U.S. Const. amend. XIV, § 1. Article I, section 9 of the Iowa Constitution provides that "no person shall be deprived of life, liberty, or property without due process of law." Iowa Const. art. I, § 9. Because the parties have not articulated any basis for distinguishing the state due process analysis from the federal due process analysis, the federal analysis shall apply equally to appellants' claim under article I, section 9. *See Pfister v. Iowa Dist. Ct. for Polk County*, 688 N.W.2d 790, 795 (Iowa 2004) ("Because the parties have articulated no basis for distinguishing these clauses for purposes of determining a parolee's right to counsel, our discussion of the federal due process claim applies equally to the claim made under the Iowa Constitution." (Citations omitted.)); *Racing Ass'n of Cent. Iowa*, 675 N.W.2d at 6 ("Despite this court's right to fashion its own test for examining claims brought under our state constitution, we do not think *this case* is the proper forum to consider an analysis that might be more compatible with Iowa's constitutional language.... [I]t is prudent to delay any consideration of whether a different analysis is appropriate to a case in which this issue was thoroughly briefed and explored." (Citations omitted.)).

■ The classes make a substantive due process argument in this appeal. Substantive due process " 'provides heightened protection against government interference with certain fundamental rights and liberty interests.' " *Troxel v. Granville*, 530 U.S. 57, 65, 120 S.Ct. 2054, 2060, 147 L.Ed.2d 49, 56 (2000) (quoting *Washington v. Glucksberg*, 521 U.S. 702, 720, 117 S.Ct. 2258, 2267, 138 L.Ed.2d 772, 787 (1997); citing *Reno v. Flores*, 507 U.S. 292, 301–02, 113 S.Ct. 1439, 1447, 123 L.Ed.2d 1, 16 (1993)). " 'Substantive due process' analysis must begin with a careful description of the asserted right, for '[t]he doctrine of judicial self-restraint requires us to exercise the utmost care whenever we are asked to break new ground in this field.' " *Reno*, 507 U.S. at 302, 113 S.Ct. at 1447, 123 L.Ed.2d at 16 (citations omitted). If the liberty interest at issue is fundamental,

strict scrutiny applies. *Id.* (citations omitted). · Otherwise, the challenged statute need only satisfy the rational-basis test. *Glucksberg,* 521 U.S. at 727, 117 S.Ct. at 2271, 138 L.Ed.2d at 792 (stating that if liberty interest is not fundamental, statute must still "be rationally related to legitimate government interests" (citations omitted)). Fundamental liberty interests are those that "are, objectively, 'deeply rooted in this Nation's history and tradition,' and 'implicit in the concept of ordered liberty,' such that 'neither liberty nor justice would exist if they were sacrificed.'" *Id.* at 720–21, 117 S.Ct. at 2268, 138 L.Ed.2d at 787–88 (citations omitted). They include "the rights to marry, to have children, to direct the education and upbringing of one's children, to marital privacy, to use contraception, to bodily integrity, and to abortion." *Id.* at 720, 117 S.Ct. at 2267, 138 L.Ed.2d at 787 (citations omitted). The Supreme Court has "also assumed, and strongly suggested, that the Due Process Clause protects the traditional right to refuse unwanted lifesaving medical treatment." *Id.* (citation omitted).

■ As previously noted, the classes conceded at oral arguments that there is no fundamental right implicated in this case. Thus, under substantive due process analysis, as with equal protection analysis, the statute need only meet the rational-basis test. For the reasons discussed in the equal protection analysis, the statute clearly meets that test.

### C. Article I, Section 22 of the Iowa Constitution[5]

■ As a part of its claim that the denial of driver's licenses to undocumented aliens violates due-process principles, the classes further argue that it violates article 1, section 22 of the Iowa Constitution. Article I, section 22 of the Iowa Constitution provides:

> Foreigners who are, or may hereafter become residents of this state, shall enjoy the same rights in respect to the possession, enjoyment and descent of property, as native born citizens.

We assume the classes claim that a driver's license is "property" under article 1, section 22. However, the classes fail to examine this claim in their brief and fail to address any specific application of the language of section 22 to this case. *See* Iowa R.App. P. 6.14(1)(*c*). Accordingly, the classes have waived this argument, and we do not address it further. *Id.*

### V. Federal Statutory Claims

■ The classes do not have a viable claim under § 1983 because their constitutional rights have not been violated. *See* 42 U.S.C. § 1983 (2004) ("Every person who, under color of any statute, ordinance, regulation, custom, or usage, of any State or Territory or the District of Columbia, subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities *secured by the Constitution and laws,* shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress...." (Emphasis added.)). In addition, because the equal protection claim raised by the classes is meritless, their § 1981 claim must also fail. *Grutter v. Bollinger,* 539 U.S. 306, 343, 123 S.Ct. 2325, 2347, 156 L.Ed.2d 304, 342 (2003) (citing *Gen. Building Contractors Ass'n, Inc. v. Pennsylvania,* 458 U.S. 375, 389–91, 102 S.Ct. 3141, 3149–50, 73 L.Ed.2d 835, 848–49 (1982) (the prohibition against discrimination in § 1981 is co-extensive with the Equal Pro-

---

5. The district court did not rule on this issue, but it was alleged in the classes' petition.

tection Clause)). Finally, 18 U.S.C. § 242 is a criminal statute, under which there is no private right of action. *Rockefeller v. U.S. Ct. of Appeals Office, for Tenth Circuit Judges*, 248 F.Supp.2d 17, 23 (D.D.C. 2003) (citing cases).

## VI. Standing of the Does

 "'Standing to sue' has been defined to mean that a party must have 'sufficient stake in an otherwise justiciable controversy to obtain judicial resolution of that controversy.'" Our cases have determined that a complaining party must (1) have a specific personal or legal interest in the litigation and (2) be injuriously affected. In the *Hawkeye Bancorporation* case, we emphasized that having a legal interest in the litigation and being injuriously affected are separate requirements for standing, both of which must be satisfied.

*Citizens for Responsible Choices v. City of Shenandoah*, 686 N.W.2d 470, 475 (Iowa 2004) (citations omitted); *see also Lujan v. Defenders of Wildlife*, 504 U.S. 555, 560, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351, 364 (1992) ("First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized, and (b) 'actual or imminent', not 'conjectural' or 'hypothetical.'" Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court.' Third, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.' (Citations and alterations omitted.)).

Because it is undisputed that the Sanchez class had standing to bring this suit and because we have already determined

that the district court properly dismissed the suit, we need not decide whether the Doe class also had standing. "[T]he Supreme Court has repeatedly held that if one party has standing in an action, a court need not reach the issue of the standing of other parties when it makes no difference to the merits of the case." *Ry. Labor Executives' Ass'n v. United States*, 987 F.2d 806, 810 (D.C.Cir.1993) (citing *Doe v. Bolton*, 410 U.S. 179, 189, 93 S.Ct. 739, 746, 35 L.Ed.2d 201, 211 (1973); *Duke Power Co. v. Carolina Envtl. Study Group*, 438 U.S. 59, 72 n. 16, 98 S.Ct. 2620, 2629 n. 16, 57 L.Ed.2d 595, 610 n. 16 (1978)).

## VII. Conclusion

We conclude that the practice of denying driver's licenses to illegal aliens violates none of the statutory and constitutional provisions raised by the classes. Accordingly, we affirm the judgment of the district court.

**AFFIRMED.**