T. J. DUNAHOO, Appellee, v. SIM T. HUBER, Appellant.

**CONSTITUTIONAL LAW:** Anti-Tipping Law—Employee and Employer in Same Services—Special Privileges and Immunities. Section 5028-u, Code Supplemental Supplement, 1915, is void as applied to an employee of a barber shop, being in violation of Article 1, Section 6, of the Constitution of Iowa, prohibiting the granting of special privileges and immunities; as, under the said law, the employee is prohibited from accepting or soliciting a tip, but his employer, engaged in the same services, is not prohibited from doing so, there being nothing in the situation of such an employer to justify discrimination in his favor, when engaged in the same pursuit as the employee.

WEAVER and EVANS, JJ., dissent.

*Appeal from Woodbury District Court.*—GEORGE JEPSON,
Judge.

MARCH 17, 1919.

A warrant was duly issued and placed in the hands of the defendant as constable, who placed Dunahoo under arrest. Thereupon, he sued out a writ of habeas corpus, and on hearing, was discharged. Defendant appeals.—*Affirmed.*

*H. M. Havner,* Attorney General, *F. C. Davidson,* Assistant Attorney General, and *C. G. Watkins,* for appellant.

*L. H. Salinger,* for appellee.

LADD, C. J.—The plaintiff, who was arrested for receiving a tip, while engaged as an employee in a barber shop, was discharged on hearing in habeas corpus proceedings. The prosecution was for violation of Section 5028-u of the Supplemental Supplement, 1915.

"Every employee of any hotel, restaurant, barber shop, or other public place, and every employee of any person, firm, partnership, or corporation, or of any public service corporation engaged in the transportation of passengers in this state, who shall accept or solicit any gratuity, tip, or other thing of value or of valuable consideration, from any guest or patron, shall be guilty of a misdemeanor, and upon conviction thereof shall be fined not less than five dollars, or more than twenty-five dollars, or be imprisoned in the county jail for a period not exceeding thirty days."

The constitutionality of this statute is challenged on several grounds, among them that it invades rights to property and its protection, and is inimical to Section 6 of Article 1 of the Constitution of Iowa, which declares that "all laws of a general nature shall have a uniform operation; the general assembly shall not grant to any citizen or class of citizens, privileges or immunities, which upon the same terms shall not equally belong to all citizens," and that portion of Section 1 of the Fourteenth Amendment to the Constitution of the United States which prohibits a state from denying to "any person within its jurisdiction the equal protection of its laws." Only these need be considered.

It will be observed, from an analysis of the statute, "that only the employee of a hotel, restaurant, or barber shop" is prohibited from accepting a tip or gratuity. The proprietor of the hotel, restaurant, or barber shop is not interfered with, or prohibited from accepting such gift. While an employee of a person engaged in the transportation of passengers may not receive any gratuity or gift, such person may, under like circumstances, accept favors of this kind. An employee is defined by Webster as "one employed by another; a clerk or workman in the service of an employer, usually distinguished from an official or officer or one employed in a position of some authority;" and a like definition is found in the Century Dictionary. See *Johnston v. Barrills,* 27 Ore. 251 (41 Pac. 656). Under this act, the proprietor of a hotel, restaurant, or barber shop, even though engaged in the same employment, would be perfectly free to accept tips or gratuities or anything of value, while the employee, working at his side and engaged in the same occupation, might be prosecuted for having committed a crime, should he do the same thing. That the proprietor would not be likely to be made the recipient of such a so-called courtesy does not answer the criticism. The present case illustrates the vice of this statute. There were two chairs in the barber shop; the employer, one Murphy, worked at one of these, and defendant at the other. Murphy undertook to pay the defendant $15 per week and 60 per cent of what he received for his work above said sum, and defendant was to have, according to the custom of the trade, such tips and gratuities as might be handed him. A customer gave him 25 cents in excess of the charges, and he was prosecuted. Had the same amount been handed to Murphy, his employer, no offense could have been charged. Manifestly, there is no reason for such discrimination. For the purpose of efficient and beneficial legislation, it is often necessary to divide the subjects upon which it operates into

classes. Indeed, the greater part of all legislation is of this character, but the authorities agree that the distinction in dividing must not be arbitrary, and must be based on differences which are apparent and reasonable. The classification should be based upon some apparent natural reason, —some reason suggested by necessity,—such a difference in situation and circumstances of the subjects placed in the one class or the other as to suggest the necessity or propriety of discrimination with respect to them.

Classifying the difference between the situations of the persons of the respective classes as employers and employees is not alone sufficient. Reference must also be had to the subject-matter of the legislation affecting the respective classes created. There can be no controversy but that employers and employees may be divided into separate classes for the purpose of legislation on many subjects, but where the evil to be remedied relates to members of one class quite as well as to another, and is quite as obnoxious to good morals, such a classification would be unwarranted. The section of the Constitution quoted exacts that the general assembly shall not grant to any class of citizens. privileges and immunities which, upon the same terms, shall not equally belong to all citizens; and this necessarily includes any class into which the citizens may be divided. That the difference between employer and employees is such as to warrant their separate classification for some purposes, would not justify this legislation if, in fact, privileges and immunities are accorded to the one class which, on the same terms, do not equally belong to the other class. We are unable to discover any reasonable ground for saying that employers as a class may accept tips or gratuities, and employees may not, especially in those vocations where they are engaged in the same identical work.

Tipping may be an evil, but this does not justify discrimination between classes in order to put it down. In

so far as the public is concerned, the evil of tipping the
employer is quite as obnoxious to good morals as though
it were done to the employee.  Surely, here there is no
ground for discrimination.  Nor can tipping the employee
be said to work an injury to him, for he is free to decline
the gratuity; and if it be claimed that his character be
in some way affected thereby, there is no ground for say-
ing that like consequences would not result to the employer
under the same circumstances.  Nor are we ready to accede
to the proposition that tipping is necessarily a wrong by the
employee against the employer.  That necessarily depends
on the nature of the employment.  If the employee were
working by the piece, or receiving so much for the perform-
ance of a particular task, it would be entirely immaterial
to the employer whether he accepted a gratuity or not.  In
such a situation, the employer would not be affected, even
though greater care were bestowed or more time given by
the employee than were the gratuity not received.  It might
prove an injury only in those instances where additional
time is consumed by the employee when time furnishes the
basis of compensation.  No such distinction is attempted in
the statute.  Moreover, the tip or gratuity is customarily
paid after the service has been rendered, and there is no
ground for saying, in general, that any additional compen-
sation is accepted from the patron at the expense of the
employer; rather, the giving of such gratuity is an x-
pression of satisfaction by the patron in whatever service
has been rendered.  The proprietor of a hotel, restaurant, or
barber shop often renders service in connection with em-
ployees, and we entertain no doubt that, in permitting the
employer, often unknown to the patron to be such, to accept
tips or gratuities, and denying a like privilege to the em-
ployee, there is unfair discrimination, and such legislation
is prohibited by the section of the Constitution quoted.  The
power of the legislature with reference to classification is

quite thoroughly covered in *State v. Garbroski,* 111 Iowa 496, where the court held that there was no ground for exempting veterans of the Civil War from the necessity of paying a peddlers' tax which was exacted from all others engaged in that occupation. There is nothing in the situation of an employer which justifies discriminating in his favor when engaged in the same pursuit as the employee, and we are of opinion that any law which permits the proprietor of a barber shop to accept a tip or gratuity upon the performance of services to a customer, and at the same time prohibits the employee, engaged in like services in the same shop, from doing likewise, is to be denounced as unjust discrimination, and inimical to the section of the Constitution prohibiting the general assembly from granting to "any citizen or class of citizens, privileges or immunities, which upon the same terms shall not equally belong to all citizens." As applied to an employee of a barber shop, the statute quoted is unconstitutional, and the court rightly discharged plaintiff, for that he was guilty of no offense against the law.—*Affirmed.*

GAYNOR, PRESTON, and STEVENS, JJ., concur.

EVANS, J. (dissenting). I am unable to concur in the majority opinion.

I. The general ground of the holding therein is that the statute in question offends against the Constitution, in that its classification makes unreasonable discrimination. The specific point made is that the prohibition of the statute applies to the employee only, and not to the employer. In my judgment, the argument is unsound. The tipping evil, if such, is, in its very nature, a wrong by the employee against the employer on the one hand, and against the patron on the other. As against the employer, it tends to procure for the patron additional consideration at the expense of the employer. On the question of classification,

we have frequently held that no more definite rule can be laid down than that classification must be natural and reasonable, and not arbitrary or capricious. Our holdings in previous cases on this question are collated in *Hubbell v. Higgins*, 148 Iowa 36. See, also, *Hunter v. Colfax Cons. Coal Co.*, 175 Iowa 245, and *State v. Fairmont Creamery Co.*, 153 Iowa 702, 703. On this question, there is no variation in our previous utterances.

Whether there was existent a tipping evil, which was injurious to public morals, and whether it was of such magnitude as to justify legislation thereon, was a question for legislative cognizance. It was competent for the legislative body to believe, also, that there was no tipping evil existent, except such as involved an employee. The rule of uniformity requires that the legislation "must extend to and embrace all persons who are or may be under like circumstances." This requirement is met in the statute under consideration. The same person may be an employer in one relation and an employee in another. Indeed, it is broadly true that every person is both an employer and an employee in his various relations. The statute forbids every person, while an employee of another, to solicit tips from the patron of his employer. Surely, this presents a natural and reasonable classification. To say that the statute may not forbid the employee to thus wrong his employer unless the employer is included within the same prohibition, impresses me as quite illogical.

II. The majority opinion lays some stress upon the particular facts involved as between the employer and the employee in this particular case. It is made to appear that the plaintiff's contract with his employer was that he was to receive $15 per week and 60 per cent of what he received for his work above said sum, and that, "according to the custom of the trade," he was to receive such tips and gratuities as might be given him. Assuming that such a con-

tract could be pleaded by the employee as a defense to the prosecution, it furnishes no reason whatever for striking down the legislation as unconstitutional. If the sum received by the employee was so received pursuant to contract with his employer, and as a part of his compensation, then the most that could be said is that, as between him and his employer, he did not receive it as a gratuity. How far this fact could avail as a defense, either in whole or in part, I do not stop to consider. Nor do I stop to consider whether an implied contract can be predicated upon a "custom of the trade," when such custom is itself illegal, or contrary to public policy. The plaintiff herein made no defense in the prosecution against him. He simply sued out a writ of habeas corpus, and claimed his right to a discharge on the ground of the unconstitutionality of the statute. And it was upon such ground that he was discharged. It will not do, therefore, to use the weakness of the prosecution in its facts in the original case as a reason for holding the statute itself unconstitutional.

While the subject-matter of this legislation appears to some people as trivial, and perhaps to no one as profound or pressing, it is none the less important that this fact shall not become the real stimulus to interference with the just prerogatives of the legislature in the exercise of the police power. Conceding the lack of overweening importance of the legislation itself, I am convinced that it is not an offense against the Constitution.

WEAVER, J., joins in this dissent.