In re the **MARRIAGE OF Michael K. HARVEY and Kristina K. Harvey,**

**Upon the Petition of Michael K. Harvey, Appellee,**

**and Concerning Kristina K. Harvey, Appellant.**

No. 89–1378.

Supreme Court of Iowa.

March 20, 1991.

As Corrected March 29, 1991.

As Amended on Denial of Rehearing May 20, 1991.

Craig S. Shannon of Grefe & Sidney, Des Moines, for appellant.

David S. Wiggins of Marcucci, Wiggins & Anderson, P.C., West Des Moines, for appellee.

Considered by McGIVERIN, C.J., and LARSON, CARTER, NEUMAN, and SNELL, JJ.

LARSON, Justice.

When Michael and Kristina Harvey were divorced in 1987, the decree provided alimony for Kristina which would cease when Michael's child support obligations were fully satisfied or Kristina died or remarried. Michael appealed, and the court of appeals modified the alimony provision by requiring it to be paid for a fixed term of eight years or until "Kristina's remarriage or cohabitation with another person." The decree was later modified to terminate alimony on the ground that Kristina had cohabited, and Kristina appealed.

Kristina argues that (1) the record does not establish cohabitation; (2) the alimony was "rehabilitative" alimony, and thus not subject to modification; and (3) "extraordinary circumstances" warrant continuation of the alimony despite any cohabitation. Michael cross-appealed, claiming that the district court should have terminated the alimony as of the time Kristina began to cohabitate, not the date the modification petition was filed. We affirm on both appeals.

I. *The Cohabitation Question.*

While the court of appeals modified the original decree to provide termination on cohabitation, it was not specific as to what acts would constitute cohabitation. The word "cohabitation" is derived from the Latin *cohabitatio,* which means dwelling house. *See In re Marriage of Gibson,* 320 N.W.2d 822, 823 (Iowa 1982) (citing Webster's New International Dictionary 520 (3d ed. 1964)).

As we noted in *Gibson,* cohabitation ordinarily involves a sexual relationship, but more is required: (1) an unrelated person of the opposite sex living or residing in the dwelling house of the former spouse, and (2) living together in the manner of husband and wife. *Id.* at 824.

In *Gibson,* we looked primarily at the parties' relationship as it involved their occupancy of the home and found that a key element of cohabitation was missing: the unrestricted access to the home which would ordinarily be enjoyed in a conventional husband and wife relationship.

The time petitioner's boyfriend spent in the dwelling was extensive, easily sufficient to qualify as residence if time alone controlled. But the time was not spent as a resident. He maintained a separate residence and shared none of the expenses of this one. He did not even have a key or the freedom to enter it except when petitioner was present. *In simple terms he did not live there.* The trial court erred in finding petitioner cohabited with a nonrelated male under the dissolution decree.

*Id.* at 824 (emphasis added).

In applying the law to the facts of this case, our review is de novo. Kristina and "Mark" began dating approximately one month before Kristina's dissolution decree was entered. Three to four nights per week Mark stayed at Kristina's house, where the parties had an ongoing sexual relationship. While Mark had a separate apartment, he spent little time there and told his landlord that he would be giving up his apartment. He did not give up his apartment, but he did sublet it and continue to live with Kristina.

From June 1, 1988, until November 1988, Mark ate most of his meals at Kristina's home and spent at least five nights per

week there, keeping a substantial part of his clothes there. He contributed in-kind services in the way of repairs and household duties, although a prior child support order left him little money to contribute to Kristina's household. Mark did several large home repair projects, including a re-siding of Kristina's garage, replacement of windows, and painting the exterior and interior of the home. He kept his tools at her home and helped with various lawn work.

Mark performed the duties of a father to Kristina's children. He disciplined them, baby-sat them, picked them up from the day care center, went to school functions, and acted as an assistant coach of a soccer team. As witnesses testified, it was common to see Mark leave for work from Kristina's house throughout the period of June 1988 to November of that year.

Mark kept his two motorcycles in her garage, and his car was kept in her driveway or in her garage. He entertained his friends in the house, and as far as his employer was concerned, Mark was to be reached at Kristina's house if it was necessary to talk to him.

Mark ceased to reside in Kristina's home in November 1988 because of an injunction issued on the complaint of the father of Kristina's children who feared possible sex abuse by Mark.

We do not pass on the wisdom of such cohabitation clauses, see *Gibson*, 320 N.W.2d at 823; that matter was conclusively decided by the court of appeals when it modified the decree. We only consider whether cohabitation was established. We have reviewed the record and reach the same conclusion as the district court. The free and unlimited access that Mark enjoyed to the home of Kristina, as well as the nature of the relationship between the parties, establish that Kristina had in fact cohabited within the meaning of the modified decree. The key is that Mark enjoyed complete and unlimited access to Kristina's home, whether she was there or not. In short, Mark "lived" there. *See id.* at 824. We therefore affirm on this issue.

## II. *The "Rehabilitative" Alimony.*

Kristina argues that this was rehabilitative alimony which should not terminate on remarriage or cohabitation. *See In re Marriage of Francis*, 442 N.W.2d 59, 62–63 (Iowa 1989). However, as Michael points out, this argument was not raised in the district court, and we may not consider it here.[1]

## III. *The "Extraordinary Circumstances".*

Kristina argues that, even if a cohabitation had been established, she should continue to receive alimony payments because extraordinary circumstances existed which required it. She cites *In re Marriage of Shima*, 360 N.W.2d 827 (Iowa 1985). However, that case must be distinguished because it did not involve an *automatic* termination of alimony on a contingency such as cohabitation or remarriage such as we have here. *Shima* turned on the general principle that remarriage creates a presumption that alimony should cease, placing the burden on the recipient to show extraordinary circumstances which make it necessary to continue the alimony. *Id.* at 828; *In re Marriage of Woodward*, 229 N.W.2d 274, 280 (Iowa 1975).

Kristina argues that the forced absence of Mark from her home, because of the injunction, is an extraordinary circumstance which justifies continuation of the alimony. However, this argument misses the point; extraordinary circumstances have no bearing on alimony which terminates on a specified event. That is automatic. Moreover, as Michael again points out, this is an argument not raised in the district court.

## IV. *The Cross–Appeal Issue.*

■ Michael complains that the trial court erred in terminating alimony as of the date that Michael's modification petition was filed instead of the time when the cohabitation began. We do not agree. While the cohabitation relationship began

1. Kristina's counsel on appeal did not represent her at the trial.

on June 1, 1988, we cannot say that it had then matured to the extent that alimony should be automatically terminated as of that date. In fact, if the modification application had been made on June 2, it is very unlikely that the alimony would have been terminated. We believe that the district court was correct in denying termination as of the date cohabitation began. It should terminate as of the date of the modification decree, August 10, 1989. The modification decree, which terminated the alimony as of November 14, 1988, the date of filing the application for modification, is modified accordingly.

Kristina's application for attorney fees for the trial and appeal are denied.

AFFIRMED ON BOTH APPEALS; AFFIRMED AS MODIFIED ON CROSS-APPEAL.