# IN THE SUPREME COURT OF IOWA

No. 07–0438

Filed November 14, 2008

**STATE OF IOWA,**

Appellee,

vs.

**HOLLY MARIE MITCHELL,**

Appellant.

---

Appeal from the Iowa District Court for Johnson County, Sylvia A. Lewis, Judge.

A mother challenges the constitutionality of Iowa's child endangerment statute. **AFFIRMED.**

Daniel J. Vondra, Iowa City, for appellant.

Thomas J. Miller, Attorney General, Jean C. Pettinger, Assistant Attorney General, Janet M. Lyness, County Attorney, and Michael D. Brennan and Anne M. Lahey, Assistant County Attorneys, for appellee.

**BAKER, Justice.**

A mother appeals from the judgment and sentence entered upon her conviction for child endangerment. We are asked to decide whether Iowa's child endangerment statute, which defines child endangerment to include a parent with custody or control over a child cohabiting with a known sex offender, violates the Due Process Clauses and the Equal Protection Clauses of the United States and Iowa Constitutions. We conclude error was not preserved on the due process claim. As for the equal protection claim, under a rational-basis standard, there is a reasonable fit between protecting children from sex crimes and limiting contact between children and sex offenders by prohibiting an unmarried parent from living with a person the parent knows to be a sex offender. The disparate treatment of married and cohabiting individuals is neither unreasonable nor arbitrary. We therefore affirm the district court's denial of the mother's motion to declare the statute unconstitutional.

## I. Background Facts and Proceedings.

Holly Mitchell is the mother and Nicholas Mitchell is the father of two children, a daughter born in November 1999, and a son born in January 2003. Holly and Nicholas were married in December 1999 and separated in March 2005. Holly moved to Coralville and moved in with her boyfriend, Kelly Wade, in approximately July 2006. Wade is a registered sex offender, convicted in 2000 for an out-of-state incident involving indecent exposure to a seventeen-year-old female victim.

In October 2006, Nicholas and Holly made arrangements for the children to spend a weekend with Holly because Nicholas had National Guard duty. Holly was scheduled to work that weekend, and Nicholas told her he did not want the children left alone with Wade. Holly assured him that they would not be alone with Wade.

The daughter testified that she, her brother, and "Kelly" were at Holly's apartment during parts of the weekend that Holly was not there and that her aunt and grandmother were there "when Mommy came." Holly's mother testified that, although Wade was there when the children were present, at no point was Wade left alone with the children. Holly's younger sister also testified that Wade was never left alone with the children. Following the visitation, Nicholas contacted the Coralville Police Department and the Iowa Department of Human Services.

On November 16, Holly was charged by trial information with child endangerment in violation of Iowa Code sections 726.6(1)(*h*) and 726.6(7) (Supp. 2005). Holly entered a plea of not guilty and filed a motion challenging the constitutionality of section 726.6(1)(*h*), which was denied. The case proceeded to jury trial, and the jury found Holly guilty of child endangerment. The district court imposed a sixty-day term of incarceration and a $625 fine, which were suspended. Holly was placed on supervised probation for one year. She appeals.

## II. Scope of Review.

Our review of constitutional challenges to a statute is well established:

> We review challenges to the constitutionality of a statute de novo. Statutes are presumed to be constitutional, and a challenger must prove unconstitutionality beyond a reasonable doubt. The challenger must refute every reasonable basis upon which the statute could be found constitutional, and if the statute may be construed in more than one way, we adopt the construction that does not violate the constitution.

*State v. Carter*, 733 N.W.2d 333, 335 (Iowa 2007) (citing *State v. Seering*, 701 N.W.2d 655, 661 (Iowa 2005)) (other citations omitted).

### III. Constitutional Claims.

Mitchell contends that Iowa Code section 726.6(1)(*h*) violates the Due Process and Equal Protection Clauses of the United States and Iowa Constitutions. In 2005, Iowa's child endangerment statute was amended to include knowingly cohabiting with a sex offender as a violation. Pursuant to the statute:

> A person who is the parent, guardian, or person having custody or control over a child or a minor under the age of eighteen with a mental or physical disability, or a person who is a member of the household in which a child or such a minor resides, commits child endangerment when the person . . . .
>
> *h.* Cohabits with a person after knowing the person is required to register or is on the sex offender registry as a sex offender under chapter 692A. However, this paragraph does not apply to a person who is a parent, guardian, or a person having custody or control over a child or a minor who is required to register as a sex offender, or to a person who is married to and living with a person required to register as a sex offender.

Iowa Code § 726.6(1)(*h*).

**A. Due Process.** The State contends Mitchell failed to preserve error on her substantive due process claim. "Issues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal." *State v. McCright*, 569 N.W.2d 605, 607 (Iowa 1997) (citing *State v. Wages*, 483 N.W.2d 325, 326 (Iowa 1992)).

> [A] mere assertion that a statute is "unconstitutional" does not encompass every conceivable constitutional violation. . . . [A] party challenging the constitutionality of a statute must alert the court to what specific constitutional provisions are allegedly compromised by the statute.

*State v. Hernandez-Lopez*, 639 N.W.2d 226, 234 (Iowa 2002).

Mitchell filed a pretrial motion to declare section 726.6(1)(*h*) unconstitutional. In the motion, Mitchell contended the statute violates

her right to free association and equal protection and stated she will submit a brief in support of the motion.[1] In her brief, Mitchell raised and discussed at length the issue of "[w]hether Iowa Code § 726.6(1)(*h*) is unconstitutional for violating Defendant's right to privacy, freedom of association, or intruding on a fundamental right." Mitchell's supplemental brief in support of the motion clearly included her due process arguments. At trial, she renewed the motion to dismiss based on various constitutional grounds. In the order denying the motion, however, the district court limited its conclusions to an equal protection analysis.

Generally, we will only review an issue raised on appeal if it was first presented to and ruled on by the district court. *McCright*, 569 N.W.2d at 607. The district court and opposing counsel received notice of the due process claim. The district court did not, however, discuss or rule on that claim. The defendant failed to file a motion to enlarge the trial court's findings or in any other manner have the district court address this issue. *See Meier v. Senecaut*, 641 N.W.2d 532, 539 (Iowa 2002) (finding that a party must request a ruling from the district court to preserve error for appeal on an issue presented but not decided). Accordingly, we determine that error was not preserved on Holly's due process claim, and we will only address the equal protection claim.

**B. Equal Protection.** Mitchell contends Iowa Code section 726.6(1)(*h*) violates the Equal Protection Clauses of the United States and Iowa Constitutions because there is no rational reason to treat persons who are married to and cohabiting with a sex offender differently from

---

[1]Mitchell raised a First Amendment claim in the district court, but does not raise that claim on appeal.

persons who are unmarried and cohabiting with a sex offender. This is the sole classification challenged and, therefore, the only one we address.

"The Fourteenth Amendment to the United States Constitution and article I, section 6 of the Iowa Constitution provide individuals equal protection under the law. This principle requires that 'similarly situated persons be treated alike under the law.'" *Wright v. Iowa Dep't of Corr.*, 747 N.W.2d 213, 216 (Iowa 2008) (quoting *In re Det. of Williams*, 628 N.W.2d 447, 452 (Iowa 2001)).

> The framers of the Constitution knew, and we should not forget today, that there is no more effective practical guaranty against arbitrary and unreasonable government than to require that the principles of law which officials would impose upon a minority must be imposed generally. Conversely, nothing opens the door to arbitrary action so effectively as to allow those officials to pick and choose only a few to whom they will apply legislation and thus to escape the political retribution that might be visited upon them if larger numbers were affected. Courts can take no better measure to assure that laws will be just than to require that laws be equal in operation.

*Ry. Express Agency v. New York*, 336 U.S. 106, 112–13, 69 S. Ct. 463, 466–67, 93 L. Ed. 533, 540 (1949) (Jackson, J., concurring).

The Equal Protection Clause does not deny states the power to treat different classes of people differently. It does, however, deny states

> the power to legislate that different treatment be accorded to persons placed by a statute into different classes on the basis of criteria wholly unrelated to the objective of that statute. A classification "must be reasonable, not arbitrary, and must rest upon some ground of difference having a fair and substantial relation to the object of the legislation . . . ."

*Reed v. Reed*, 404 U.S. 71, 75–76, 92 S. Ct. 251, 253–54, 30 L. Ed. 2d 225, 229 (1971) (quoting *F.S. Royster Guano Co. v. Virginia*, 253 U.S. 412, 415, 40 S. Ct. 560, 561, 64 L. Ed. 989, 990 (1920)) (other citations omitted).

To determine whether a statute violates equal protection, we first determine whether the statute makes a distinction between similarly situated individuals. *Wright*, 747 N.W.2d at 216. Pursuant to section 726.6(1)(*h*), a parent commits child endangerment when she cohabits with a person she knows to be a sex offender, but the statute "does not apply . . . to a person who is married to and living with a person required to register as a sex offender." In each scenario, the parent is permitting her child to live with a registered sex offender, but the statute clearly makes a distinction between unmarried parents or guardians of minor children who cohabit with a registered sex offender and those who cohabit with and are married to a registered sex offender. But for the marriage distinction, the parents are similarly situated. The statute is, therefore, subject to equal protection review.

We next determine whether to apply strict scrutiny or rational basis in reviewing the statute. *See id.*

> A statute is subject to strict-scrutiny analysis—the state must show the classification is narrowly tailored to a compelling state interest—when it classifies individuals "in terms of their ability to exercise a fundamental right or when it classifies or distinguishes persons by race or national origin." All other statutory classifications are subject to rational-basis review in which case the defendant must show the classification bears no rational relationship to a legitimate government interest.

*Id.* (quoting *Williams*, 628 N.W.2d at 452).

Mitchell concedes that, because this court has not recognized unmarried persons as a protected class, the statute is subject to rational basis review. She argues, however, that Iowa Code section 726.6(1)(*h*) violates her right to equal protection because the legislative decision to distinguish between the two classes by subjecting only unmarried couples to criminal charges for engaging in the same behavior as married

couples is arbitrary and irrational. She further argues that "[t]he legislature drew an arbitrary line—marital status—with such a weak relationship between classification and the purpose, that the 'classification' must be viewed as arbitrary and capricious."

Under the rational-basis standard, a statute is constitutional if the classification is reasonable and operates equally upon each person within the class. *State v. Mann*, 602 N.W.2d 785, 792 (Iowa 1999). "A classification 'does not deny equal protection simply because in practice it results in some inequality; practical problems of government permit rough accommodations.'" *Id.* (quoting *State v. Hall*, 227 N.W.2d 192, 194 (Iowa 1975)). "[A]lthough the rational basis standard of review is admittedly deferential to legislative judgment, 'it is not a toothless one' in Iowa." *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 9 (Iowa 2004) (quoting *Mathews v. de Castro*, 429 U.S. 181, 185, 97 S. Ct. 431, 434, 50 L. Ed. 2d 389, 394 (1976)); *see also Ames Rental Prop. Ass'n v. City of Ames*, 736 N.W.2d 255, 263–66 (Iowa 2007) (Wiggins, J., dissenting). " '[O]ur obligation not to interfere with the legislature's right to pass laws is no higher than our obligation to protect the citizens from discriminatory class legislation violative of the constitutional guaranty of equality of all before the law.'" *Racing Ass'n of Cent. Iowa*, 675 N.W.2d at 16 (quoting *Sperry & Hutchinson Co. v. Hoegh*, 246 Iowa 9, 24, 65 N.W.2d 410, 419 (1954)).

The question for our determination, then, "is whether there is some ground of difference that rationally explains the different treatment accorded married and unmarried persons under" section 726.6(1)(*h*). *Eisenstadt v. Baird*, 405 U.S. 438, 447, 92 S. Ct. 1029, 1038, 31 L. Ed. 2d 349, 359 (1972).

Under rational-basis review, where a group possesses "distinguishing characteristics relevant to interests the State has the authority to implement," a State's decision to act on the basis of those differences does not give rise to a constitutional violation. "Such a classification cannot run afoul of the Equal Protection Clause if there is a rational relationship between the disparity of treatment and some legitimate governmental purpose." Moreover, the State need not articulate its reasoning at the moment a particular decision is made. Rather, the burden is upon the challenging party to negative " 'any reasonably conceivable state of facts that could provide a rational basis for the classification.' "

*Bd. of Trs. v. Garrett*, 531 U.S. 356, 366–67, 121 S. Ct. 955, 963–64, 148 L. Ed. 2d 866, 879 (2001) (quoting *Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 441, 105 S. Ct. 3249, 3249, 87 L. Ed. 2d 313, 321 (1985); *Heller v. Doe*, 509 U.S. 312, 320, 113 S. Ct. 2637, 2642, 125 L. Ed. 2d 257, 270 (1993) (other citations omitted)).

Mitchell does not argue that the government interest in protecting children from sex offenders is not legitimate. Her argument, rather, is that there is no rational distinction between a child living with a sex offender to whom his or her parent is unmarried and living with a stepparent who is a sex offender. She argues a child's risk of suffering sexual abuse is no greater in cohabiting households than in married households. There is, however, nothing in this record to support Mitchell's assertion, and Mitchell has the "burden of negating all reasonable bases that could justify the challenged statute." *Sanchez v. State*, 692 N.W.2d 812, 818 (Iowa 2005). The State asserts the classification made by the legislature has a reasonable relationship to the government's interest in protecting children from sexual abuse because it is rational to determine that a sex offender married to the parent will have a greater sense of commitment to the family unit created by the marriage and that the marital relationship may impose on the sex

offender greater financial and other obligations toward the family, so that the sex offender feels he or she has a stake in the well-being of the children.

We have previously stated that one aspect of cohabitation is the "[j]oint use or ownership of property." *State v. Kellogg*, 542 N.W.2d 514, 518 (Iowa 1996) (quoting *People v. Holifield*, 252 Cal. Rptr. 729, 734 (Cal. Dist. Ct. App. 1988)). It follows that sex offenders who cohabit with a person with control or custody of his or her minor children also share living quarters with the children and have joint use of the children's home. *See id.* at 517 (stating under common meaning of term "cohabiting," persons who are "cohabiting" live together). This living arrangement allows the sex offender access to the children in their home, a place traditionally and constitutionally protected from public intrusion. It also potentially allows unlimited and unmonitored access to children during those early morning and nighttime hours typically devoted to private activities such as bathing, changing clothes, and bedtime. It is this access the State seeks to control.

From *Kellogg* we can also discern that cohabiting is more than simply living together, even though it is not tantamount to marriage. Along with sharing living quarters and expenses and joint use of property, we have identified "sexual relations," "[t]he continuity of the relationship," and "[t]he length of the relationship" as appropriate considerations for determining whether a couple is cohabiting. *Id.* at 518. These considerations indicate that, in a cohabiting relationship, the sex offender may have some financial obligation and stake in the children's well-being, but we do not believe that these considerations compel us to find that a cohabiting sex offender would have a financial obligation and stake in the children's well-being as great as that of a

stepparent. The legislature could reasonably conclude that unmarried cohabitation of a parent with a sex offender poses greater danger to children than cohabitation between married persons.

" 'As long as the classificatory scheme chosen by [the legislature] rationally advances a reasonable and identifiable governmental objective, we must disregard the existence of other methods of allocation that we, as individuals, perhaps would have preferred.' " *Sanchez,* 692 N.W.2d at 818 (quoting *Schweiker v. Wilson,* 450 U.S. 221, 235, 101 S. Ct. 1074, 1083, 67 L. Ed. 2d 186, 198 (1981)). We are not so naïve as to believe that marriage is a panacea; however, the legislative majority could reasonably conclude that unmarried cohabitation of a parent with a sex offender poses greater danger to children than cohabitation between married persons.

Section 726.6(1)(*h*) seeks to protect children from sex crimes by minimizing sex offenders' access to children where and when they are most vulnerable. *See Doe v. Miller,* 405 F.3d 700, 715 (8th Cir. 2005) (restricting access of sex offenders to children is a legitimate purpose); *Seering,* 701 N.W.2d at 665 (preventing sex offenders from reoffending is a government interest). The legislature could have reasonably determined its chosen classification scheme, which differentiates between cohabitants who are married and those who are unmarried, would rationally advance the government objective of protecting children from sex offenders. "The court's power to declare a statute or ordinance unconstitutional is tempered by the court's respect for the legislative process. Under the rational basis test, we must generally defer to . . . legislative judgment." *Ames Rental Prop. Ass'n,* 736 N.W.2d at 263. Under the rational basis test we conclude the statute does not violate the Equal Protection Clauses of the United States and Iowa Constitutions.

Mitchell also contends that "Iowa Code section 726.6(1)(*h*) is overbroad and criminalizes the behavior of unmarried people who have not placed their children in danger." Even under the rational basis test, a statute may be unconstitutional if it is so overinclusive and underinclusive as to be irrational. *Racing Ass'n of Cent. Iowa*, 675 N.W.2d at 10. We have stated that " '[c]lassifications do not deny equal protection simply because they result in some inequality.' " *Claude v. Guar. Nat'l Ins. Co.*, 679 N.W.2d 659, 665 (Iowa 2004) (quoting *Bierkamp v. Rogers*, 293 N.W.2d 577, 581 (Iowa 1980)). A statute may not provide perfect justice, but it does not violate equal protection unless it results in such injustice as to be irrational and arbitrary. *Id.* Just because this law does not protect all children from having a sexual offender living in their home does not make it a violation of equal protection. Similarly, a net that catches more than intended does not necessarily violate equal protection. A law need not right all possible harms in order to be constitutional. *In re Morrow*, 616 N.W.2d 544, 549 (Iowa 2000). In determining whether a classification is so overinclusive and underinclusive as to be irrational, we have set forth the following test:

> [T]his court must first determine whether the Iowa legislature had a valid reason [for the classification]. In this regard, "the statute must serve a legitimate governmental interest." Moreover, the claimed state interest must be "*realistically* conceivable." Our court must then decide whether this reason has a basis in fact.

*Racing Ass'n of Cent. Iowa*, 675 N.W.2d at 7–8 (quoting *Glowacki v. State Bd. of Med. Exam'rs*, 501 N.W.2d 539, 541 (Iowa 1993); *Miller v. Boone County Hosp.*, 394 N.W.2d 776, 779 (Iowa 1986)) (other citations omitted).

Although we are not bound to accept at face value the State's conclusion that unmarried sex offenders pose a greater risk, our role in

the absence of contrary evidence is to determine if the State's asserted reasons for the statute are plausible, realistically conceivable, and have a basis in fact. *Id.* at 8 n.4.

We conclude that the classification scheme is plausible under this record. As previously noted, the legislative majority could realistically conceive that unmarried cohabitation of a parent with a sex offender poses greater danger to children than cohabitation between married persons. The fact that not all sex offenders pose a threat to children is not so overinclusive as to violate equal protection. Mitchell has the burden of showing that there is not a plausible policy reason for the classification, that the claimed state interest is not realistically conceivable, or that the classification has no basis in fact. Mitchell has not met her burden to establish that the classification chosen by the legislature for the protection of children is so attenuated as to render it arbitrary or unreasonable under this record. Therefore, the statute does not violate the Equal Protection Clauses of the United States and Iowa Constitutions.

## IV. Disposition.

Iowa Code section 726.6(1)(*h*) does not violate equal protection based on its disparate treatment of married and cohabiting individuals. This classification is not unreasonable or arbitrary, nor so overinclusive as to be irrational. The objective of the statute is to protect children from sex crimes by limiting contact with registered sex offenders, who are neither a parent nor stepparent. The legislature could rationally make this classification because it is realistically conceivable that unmarried cohabiting sex offenders do not have the same stake in the children's financial and physical well-being, and therefore pose a greater threat to the children. There is a rational relationship between the Legislature's

goal of protecting children and the statute, and therefore we affirm the district court's denial of Mitchell's motion to declare the statute unconstitutional.

**AFFIRMED.**

All justices concur except Wiggins and Hecht, JJ., who dissent.

**WIGGINS, Justice (dissenting).**

It is the exclusive prerogative of this court to determine the constitutionality of Iowa statutes challenged under article I, section 6, the equal protection clause of the Iowa Constitution. *Callender v. Skiles*, 591 N.W.2d 182, 187 (Iowa 1999). Even if the Iowa Constitution and the United States Constitution are similarly or identically phrased, we can independently consider Iowa constitutional arguments. *Racing Ass'n of Cent. Iowa v. Fitzgerald*, 675 N.W.2d 1, 6 (Iowa 2004) (citing William J. Brennan, Jr., *State Constitutions and the Protection of Individual Rights*, 90 Harv. L. Rev. 489, 500 (1977)). "This result is particularly possible in view of 'the ill-defined parameters of the equal protection clause.' " *Id.* (quoting *Miller v. Boone County Hosp.*, 394 N.W.2d 776, 781 (Iowa 1986)).

Our case law gives us the analytical framework to decide whether a statute violates the equal protection clause of the Iowa Constitution. *Racing Ass'n of Cent. Iowa*, 675 N.W.2d at 7–9. In analyzing an equal protection challenge under the Iowa Constitution, we must first determine whether the legislature had a valid reason to treat a person cohabitating with a sex offender differently than other persons who have a relationship with a sex offender. *Id.* at 7. This determination requires us to find a plausible policy reason for the classification. *Id.* In making this determination, our court must not only ask whether the statute serves a legitimate government purpose, but also whether the claimed state interest is realistically conceivable. *Id.* Second, we must decide whether the State's claimed reason has a basis in fact. *Id.* at 7–8. To decide whether the State's claimed reason has a basis in fact, we must determine whether the legislature could rationally believe facts upon which the classification is based are true. *Id.* at 8. Lastly, we must

consider whether the relationship between the classification, i.e., the differences between persons cohabitating with sex offenders and persons with other relationships to sex offenders, and the purpose of the classification is so weak that the classification must be viewed as arbitrary. *Id.* In other words, to uphold the statute, we must conclude "the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational." *Nordlinger v. Hahn*, 505 U.S. 1, 11, 112 S. Ct. 2326, 2332, 120 L. Ed. 2d 1, 13 (1992) (citations omitted).

I cannot agree with the majority's conclusion that "unmarried cohabitation of a parent with a sex offender poses greater danger to children than cohabitation between married persons" because as the majority contends

> a sex offender married to the parent will have a greater sense of commitment to the family unit created by the marriage and that the marital relationship may impose on the sex offender greater financial and other obligations toward the family, so that the sex offender feels he or she has a stake in the well-being of the children.

The Code does not define cohabitation. Our existing case law defines cohabitation as having two elements. *In re Marriage of Gibson*, 320 N.W.2d 822, 824 (Iowa 1982). First, an unrelated person must be living or residing in the dwelling. *Id.* Second, the two unrelated persons must be living together in the manner of husband and wife. *Id.* In other words, cohabitation is essentially a marriage without the license. The commitment to the family unit, the financial obligations, and other obligations of a cohabiter to maintain the family unit is no more or less than that of a married individual. It is absurd to think that the financial implications of a dissolution will provide a greater deterrent than the stiff criminal penalties the legislature has enacted for sex offenders.

Moreover, our present laws allow the department of social services to remove a child from the home of a sex offender. Accordingly, I would hold the relationship of the classification, marriage versus cohabitation, to the goal of protecting children living in the home with a sex offender is so attenuated as to render the distinction arbitrary or irrational.

This attenuation is amplified when we employ an overinclusive-underinclusive dichotomy analysis under the Iowa Constitution to determine whether the relationship of the classification to its goal is not so attenuated as to render the distinction arbitrary or irrational. *Compare Racing Ass'n of Cent. Iowa*, 675 N.W.2d at 10 (finding the legislative purpose behind a taxation provision cannot withstand rational basis review because of the extreme degrees of overinclusion and underinclusion), *and Bierkamp v. Rogers*, 293 N.W.2d 577, 584 (Iowa 1980) (finding a classification based on extreme degrees of overinclusion and underinclusion cannot pass rational basis review), *with Vance v. Bradley*, 440 U.S. 93, 108, 99 S. Ct. 939, 948, 59 L. Ed. 2d 171, 183 (1979) (demonstrating the United States Supreme Court's tolerance for laws that are overinclusive and underinclusive when conducting a rational basis review). When we find "a classification involves extreme degrees of overinclusion and underinclusion in relation to any particular goal," then that statute fails rational basis review. *Bierkamp*, 293 N.W.2d at 584; *see also Racing Ass'n of Cent. Iowa*, 675 N.W.2d at 10.

Section 726.6(1)(*h*)'s reach is limited. It provides:

> 1. A person who is the parent, guardian, or person having custody or control over a child or a minor under the age of eighteen with a mental or physical disability, or a person who is a member of the household in which a child or such a minor resides, commits child endangerment when the person does any of the following:
>
> . . .

> h.  Cohabits with a person after knowing the person is required to register or is on the sex offender registry as a sex offender under chapter 692A.  However, this paragraph does not apply to a person who is a parent, guardian, or a person having custody or control over a child or a minor who is required to register as a sex offender, or to a person who is married to and living with a person required to register as a sex offender.

Iowa Code § 726.6(1)(*h*) (Supp. 2005).  Cohabitation is fact specific and applies to a very narrow range of relationships.  *Compare In re Marriage of Gibson*, 320 N.W.2d at 824 (finding that an unrelated male who spent four nights a week at his girlfriend's house, maintained an ongoing sexual relationship with her, ate meals at her house, but did not share expenses or have unlimited access to the house was not cohabitating), *with In re Marriage of Harvey*, 466 N.W.2d 916, 917–18 (Iowa 1991) (finding that an unrelated male who spent five nights a week at his girlfriend's house, maintained an ongoing sexual relationship with her, ate meals at her house, shared expenses, and had unlimited access to the house was cohabitating).

The relationships not covered by this statute include persons married to a sex offender, persons living with a sex offender, but not cohabitating, persons having a serious dating relationship with a sex offender, persons having a casual dating relationship with a sex offender, persons who are friends with a sex offender, persons who are acquaintances of a sex offender, persons who are related to a sex offender, and persons who hire a sex offender to do work for them.  In each of these situations, the sex offender may have access to a child in the home.  Moreover, access by some of these individuals may be unlimited.

The relationship that section 726.6(1)(*h*) criminalizes makes the statute both overinclusive and underinclusive.  Further, the degree to

which this overinclusiveness and underinclusiveness is present is extreme because it is irrational to suppose a sex offender cohabitating in a person's home will have greater access to a child in that home than a sex offender who is married to the person, a sex offender who is living with the person, but not cohabitating, a sex offender who is having a serious dating relationship with the person, a sex offender who is having a casual dating relationship with the person, a sex offender who is a friend to the person, a sex offender who is acquainted with the person, a sex offender who is related to the person, and a sex offender who is hired by the person to do work for them. The extreme overinclusiveness and underinclusiveness of the statute makes the relationship between the classification and the legislative purpose of keeping sex offenders from having access to children arbitrary; therefore, the statute does not withstand review under the rational basis test we have developed under the Iowa Constitution. *See Racing Ass'n of Cent. Iowa*, 675 N.W.2d at 10 (finding the legislative purpose behind a taxation provision cannot withstand rational basis review because of the extreme degrees of overinclusion and underinclusion); *Bierkamp*, 293 N.W.2d at 584 (finding the Iowa guest statute does not rationally further the legitimate state purpose of preventing collusive recoveries from insurance companies); *Fed. Land Bank v. Arnold*, 426 N.W.2d 153, 157 (Iowa 1988) (holding discrimination in redemption periods violated the equal protection clause where class membership did not correlate with purported class distinctions drawn by legislature); *Chicago & N.W. Ry. v. Fachman*, 255 Iowa 989, 997, 125 N.W.2d 210, 214 (1963) ("It is often said a reasonable classification is one which includes all who are similarly situated, and none who are not."); *Dunahoo v. Huber*, 185 Iowa 753, 756, 171 N.W. 123, 124 (1919) (finding statute violated state constitution because

classification made by legislature was unwarranted "where the evil to be remedied relates to members of one class quite as well as to another").

Accordingly, I would find the statute unconstitutional under the equal protection clause of the Iowa Constitution.

Hecht, J., joins this dissent.