# IN THE COURT OF APPEALS OF IOWA

No. 13-1711
Filed February 11, 2015

**JOHNNY LOUIS ARTHUR ANDERSON,**
    Applicant-Appellant,

**vs.**

**STATE OF IOWA,**
    Respondent-Appellee.
_____

Appeal from the Iowa District Court for Black Hawk County, Jon C. Fister (2013 postconviction trial), Thomas N. Bower (2006 motion to transfer to juvenile court), and Todd A. Geer (criminal trial), Judges.

Johnny Anderson appeals the district court's denial of his application for postconviction relief. **AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.**

Thomas M. McIntee, Waterloo, for appellant.

Thomas J. Miller, Attorney General, Heather R. Quick, Assistant Attorney General, Thomas Ferguson, County Attorney, and Kimberly Griffith, Assistant County Attorney, for appellee State.

Considered by Vogel, P.J., and Vaitheswaran and Potterfield, JJ. Bower, J., takes no part.

**POTTERFIELD, J.**

Johnny Louis Arthur Anderson appeals from the dismissal of his application for postconviction relief (PCR). He argues he was provided with ineffective assistance of trial, appellate, and postconviction counsel in several ways. He also contends he is entitled to resentencing pursuant to *State v. Lyle*, 854 N.W.2d 378, 400 (Iowa 2014). Anderson's claims of ineffective assistance of counsel fail. However, we vacate his sentence and remand for resentencing as required by *Lyle*.

**I. Background Facts and Proceedings.**

Anderson was born on May 23, 1987. When he was eighteen, Anderson was charged by trial information with sexual abuse in the second degree for committing sex acts with S.V. "when she was six years old" "on or about 1/1/00-12/31/02."[1] Anderson was also charged with sexual abuse in the third degree for committing sex acts with L.V. "when she was twelve years old" "on or about 1/1/02 -12/31/04."[2] Anderson's motion to transfer jurisdiction to the juvenile court was denied on May 17, 2006.

At Anderson's August 16, 2011 criminal bench trial,[3] the district court found the following facts:

> [S.V.] was born August 11, 1994. At the time these acts occurred, she resided [in] Waterloo, Black Hawk County, Iowa. She is currently a high school student in Black Hawk County. Defendant is S.V.'s cousin. During the relevant time period, S.V.'s family and defendant's family frequently spent time together, often on Sunday

---

[1] Anderson would have been twelve to fifteen years old during this time period.

[2] Anderson would have been fourteen to seventeen years old during this time period.

[3] The five-year delay was unsuccessfully challenged on appeal as being a violation of Anderson's speedy-trial rights and due process. *See State v. Anderson*, No. 11-1991, 2012 WL 5356105 (Iowa Ct. App. Oct. 31, 2012).

afternoons for family gatherings. The cousins also occasionally spent the night together at their grandparents' house, defendant's house and S.V.'s home. However, most contact between S.V. and defendant occurred at their grandparents' house . . . in Waterloo, Black Hawk County, Iowa.

Until defendant's actions were reported [in 2005], the families got along very well. When S.V. was approximately four years of age, defendant began touching her inappropriately. He placed his hands down her pants. He touched her legs, thighs and vaginal area. He touched her on the outside and a "little bit" on the inside of her vagina. Defendant rubbed her on the outside of her vagina, and also "poked and prodded" her inside her vagina with his fingers. S.V. clearly remembers such an incident occurring at her grandparents' house when she was *approximately seven years old* [at which point Anderson would have been fourteen years of age]. She clamped her thighs together, but defendant continued to rub her vaginal area. S.V. describes an incident occurring in the evening hours at her grandparents' home. Defendant was touching her, and S.V. clamped her legs. Defendant told her to stop clamping her legs and then rubbed, prodded and poked his fingers inside her vagina. S.V. testified that she knew she should not be participating in such activities with defendant, but she did not tell him to stop. At the time, she was in regular clothing, but her pants were unzipped.

S.V. also describes an incident occurring at her grandparents' house when she was younger than seven years of age. On that occasion, defendant was sitting on the bed. S.V. pulled down her pants and sat on his lap. Defendant touched her with his penis. He unzipped his pants, and she faced away from him as she sat on his lap. She felt his penis touch against her vagina. On another occasion, also occurring at S.V.'s grandparents' house when she was approximately six years of age, she observed her sister, L.V., with her hand on defendant's penis. S.V. began doing the same thing. Defendant was laughing, and his pants were pulled down. His penis was erect.

On another occasion, during the same general time frame, defendant was with S.V. at his home. He pulled down his pants and sat on his bottom bunk. S.V. put her mouth on defendant's penis. S.V. moved her head up and down. Defendant's penis was erect, and he stated to S.V., "Does that taste good?".

S.V. also recalls an incident occurring at defendant's house between defendant and L.S. She saw defendant's penis exposed out of the hole in his boxer shorts.

Defendant is seven years older than S.V. He was 13 to 14 years of age when the events occurred.

L.V., S.V.'s sister, born July 1, 1990, was also abused by defendant. . . . When *L.V. was approximately 12 years of age*,

> defendant placed his hands in her pants and inserted his fingers into her vagina. Her grandfather came in and separated her from the defendant. She distinctly recalls that this occurred while they were watching Fresh Prince of Bel-Air on TV. *When L.V. was 13* years of age, she was with defendant as he was masturbating behind the bed in the guest bedroom of her grandparents' house. Defendant was lying down on the floor, and she was sitting next to him. Defendant pulled her head to his penis, and ejaculated in her mouth. She ran to the sink and vomited. L.V.'s older sister came into the room and inquired about what happened. L.V. disclosed the incident to her at that time. L.V.'s sister credibly testified that she actually observed the event occurring. She saw L.V. and defendant behind the bed, with defendant's penis in L.V.'s mouth. L.V. then ran to the sink spitting something out. The incident was never disclosed to relatives. L.V.'s sister also observed S.V. and the defendant on a bed at L.V.'s grandparents' home. She walked in on them and observed that L.V.'s pants were halfway down, and that defendant's hands were in her pants.
>
> L.V. also credibly describes an incident occurring when she was approximately 14 years of age, which incident occurred at her home. Defendant was spending the night in her brother's room. Defendant came to L.V.'s room and they started playing "a game." Defendant and L.V. ended up having mutual oral sex, with defendant's penis in her mouth while his tongue was in her vagina.

(Emphasis added.)

The trial court concluded Anderson committed sexual abuse against S.V. when she was under the age of twelve, finding him guilty of sexual abuse in the second degree, *see* Iowa Code § 709.3(2),[4] and against L.V. when she was under the age of fourteen, finding him guilty of sexual abuse in the third degree as charged in the trial information. *See id.* § 709.4(2)(b). The convictions were affirmed on appeal. *See Anderson*, 2012 WL 5356105, at *6-7.

On April 1, 2013, Anderson filed a pro se PCR application. He was appointed counsel, who filed an amended application asserting ineffective

---

[4] The relevant code sections have not been amended since 1999.

assistance of trial and appellate counsel.[5]  A trial was held on October 16, 2013. The district court rejected Anderson's ineffectiveness claims,[6] and he now appeals.

## II. Scope and Standard of Review.

We normally review PCR proceedings for errors at law. *Everett v. State*, 789 N.W.2d 151, 155 (Iowa 2010).  However, when we review claims related to the constitutional right of effective representation, our review is de novo. *Lamasters v. State*, 821 N.W.2d 856, 862 (Iowa 2012).

## III. Discussion.

*A. Ineffective assistance of counsel.*  To establish a claim of ineffective assistance of counsel, Anderson must establish both that his counsel breached an essential duty and prejudice resulted.  *Id.* at 866.  We may affirm if either element is lacking.  *Id.*  The essential-duty prong requires the claimant to prove counsel performed below the standard of a reasonably competent attorney; we start from the presumption that counsel performed competently.  *Id.*  To show prejudice resulted, the claimant must show that counsel's errors were so serious as to deprive him of a fair trial.  *Id.*  The same standards of representation apply to postconviction counsel as to trial counsel.  *Dunbar v. State*, 515 N.W.2d 12, 15 (Iowa 1994).

---

[5] Five of eleven claims were dismissed prior to the PCR trial because they had been addressed on direct appeal.

[6] Anderson asserted (1) his criminal defense counsel should have deposed defense witnesses, (2) trial and appellate counsel should have challenged Iowa Code section 802.2 as being unconstitutional, (3) appellate counsel was ineffective in failing to file an application for further review, (4) counsel did not adequately explain his waiver of a jury trial, (5) counsel did not seek to gain access to the child victims' medical and mental health records, and (6) counsel did not attempt to present reputation or opinion evidence as to the victims' credibility.

"When complaining about the adequacy of an attorney's representation, it is not enough to simply claim that counsel should have done a better job. The applicant must state the specific ways in which counsel's performance was inadequate and identify how competent representation probably would have changed the outcome." *Dunbar*, 515 N.W.2d at 15.

Anderson asserts here that the criminal court erred in failing to transfer the case to juvenile court, contending the district court was without jurisdiction to try him because he was younger than fourteen years of age during time periods alleged in the trial information. He also contends his waiver of jury trial was defective because it did not come ten days before trial started. He summarily asserts his counsel was ineffective in failing to raise these issues. Both claims fail because Anderson has not established he was prejudiced by either asserted inadequacy.

In *State v. Bruegger*, 773 N.W.2d 862, 885 (Iowa 2009), our supreme court stated: "In Iowa, a person who is under fourteen years of age cannot be tried as an adult in criminal court. Iowa Code § 232.45(6)(a)." However, the criminal court, as fact finder, determined Anderson committed at least one sexual act with a child (S.V.) when she was under the age of twelve and Anderson was fourteen years old. *See* Iowa Code § 709.3(2). The court also found Anderson committed at least one sexual act with L.V. when she was thirteen years old— Anderson was then fifteen years old. *See id.* § 709.4(2)(b). Section 232.45(6)(a) did not preclude the juvenile court from waiving its jurisdiction.

With respect to Anderson's claim that his jury-trial waiver was invalid because it did not come ten days before trial, the State points out that it

consented to the waiver.[7] Counsel was not ineffective in failing to raise a meritless issue. *See State v. Dudley*, 766 N.W.2d 606, 620 (Iowa 2009) ("[W]e have held that counsel has no duty to raise an issue that has no merit.").

Anderson next asserts the PCR court erred in ruling section 802.2 is constitutional. The PCR court observed that Anderson cited no authority for his claim that section 802.2 is unconstitutional.[8] In *State v. Mitchell*, 757 N.W.2d 431, 435 (Iowa 2008), our supreme court reinforced the principle that "[i]ssues not raised before the district court, including constitutional issues, cannot be raised for the first time on appeal." The court continued: "'[A] mere assertion that a statute is 'unconstitutional' does not encompass every conceivable constitutional violation. . . . [A] party challenging the constitutionality of a statute must alert the court to what specific constitutional provisions are allegedly compromised by the statute.'" *Mitchell*, 757 N.W.2d at 435 (quoting *State v. Hernandez–Lopez*, 639 N.W.2d 226, 234 (Iowa 2002)). Anderson did not alert the district court to a specific constitutional provision allegedly compromised. His

---

[7] Iowa Rule of Criminal Procedure 2.17(1) provides:
> Cases required to be tried by jury shall be so tried unless the defendant voluntarily and intelligently waives a jury trial in writing and on the record within 30 days after arraignment, or if no waiver is made within 30 days after arraignment the defendant may waive within ten days after the completion of discovery, but not later than ten days prior to the date set for trial, as provided in these rules for good cause shown, and *after such times only with the consent of the prosecuting attorney.*

(Emphasis added.)

[8] At the hearing, Anderson's counsel stated, "I just want to respectfully remind the court of issue number five, and I believe that trial counsel and appellate counsel were ineffective for not raising the issue of constitutionality of that ten-year statute of limitations." Paragraph five reads: "Section 802.2 the code of Iowa is unconstitutional under the Iowa and United State Constitutions. Counsel failed to challenge the constitutionality of the statute." When asked by the PCR court, "[D]o you have any legal authority to support your claim that it's unconsitutional?" counsel stated, "I have no authority, but I'm citing that it's unconstitutional in this case."

general claim that section 802.2 is unconstitutional did not preserve a claim for this court's review. *Id.*

Anderson argues postconviction counsel was ineffective in not calling prior counsel as witnesses to explain why they had not moved to dismiss the criminal proceedings for violations of the speedy-trial rule or "re-demand speedy trial." He asserts that calling criminal trial counsel was an essential duty, which PCR trial counsel failed to perform and "the consequence was clearly prejudicial." However, on direct appeal from his criminal convictions, this court ruled,

> Here, Anderson waived his speedy trial rights, and he does not contend his waiver was involuntary. He was represented by a series of counsel, each of whom required time to prepare for his defense. The continuances granted at his behest are chargeable to him. Only about four months of the five years of delay can be attributable to the State.
> . . . .
> While we do not condone the length of time this case was pending, viewing the totality of circumstances, including that defense witnesses were asserted to be out of state and difficult to locate, we do not find a due process violation such that counsel were ineffective in failing to move to dismiss.

*Anderson*, 2012 WL 5356105, at *6-7. And contrary to his claim in his PCR application, his appellate counsel filed an application for further review, which was denied by order of the supreme court on December 24, 2012. Anderson cannot re-litigate this alleged speedy-trial violation and thus cannot establish PCR counsel was ineffective in failing to have prior counsel testify about such a claim. *See* Iowa Code § 822.8; *Holmes v. State*, 775 N.W.2d 733, 735 (Iowa Ct. App. 2009) (stating a PCR applicant "cannot now relitigate issues decided adversely to him on direct appeal").

*B. Illegal sentence.* Anderson contends the seventy-percent mandatory minimum sentence constitutes cruel and unusual punishment, citing *State v. Lyle*, 854 N.W.2d 378, 400 (Iowa 2014). The State concedes Anderson's sentence, which requires that he serve a mandatory minimum of seventy percent of his sentence before being eligible for parole, must be vacated and this matter remanded to the district court for resentencing.

In *Lyle*, our supreme court held "all mandatory minimum sentences of imprisonment for youthful offenders are unconstitutional under the cruel and unusual punishment clause in article I, section 17 of [the Iowa] constitution." 854 N.W.2d at 400. The court determined all juveniles currently serving a mandatory sentence of imprisonment should be resentenced, recognizing the court has "the discretion to consider youth and its attendant circumstances as a mitigating factor and to impose a lighter punishment, including one that suspends all or part of the sentence, including any mandatory minimum." *Id.* at 404.

Pursuant to *Lyle*, we vacate Anderson's sentence and remand his case for resentencing for offenses he committed as a juvenile after an individualized sentencing hearing under the standards set forth by the Iowa Supreme Court.

**AFFIRMED; SENTENCE VACATED AND REMANDED FOR RESENTENCING.**